UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAELANN BRYANNA MURRAY
o/b/o M.B.M.,

                     Plaintiff,

v.

COMMISSIONER,

                     Defendant.

**Hon. Hugh B. Scott**

**17CV1249**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 16 (plaintiff), 21 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 7).

## PROCEDURAL BACKGROUND

The plaintiff ("Michaelann Murray" or "plaintiff") filed an application for disability insurance benefits on March 10, 2014 [R. 13], for her child, claimant M.B.M. ("claimant" or

"M.B.M."). That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated July 26, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 2, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 1, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 16, 21), and plaintiff duly replied (Docket No. 23; cf. Docket No. 22). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff is the mother of the infant claimant M.B.M., born April 27, 2005, and a school-age youth at the time of the hearing. Plaintiff contends that claimant was disabled as of the onset date of April 1, 2010. Plaintiff claims her son had the following impairments deemed to be severe by the Administrative Law Judge: attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), Auditory Processing Disorder and Adjustment Disorder with mixed anxiety and depressed mood [R. 13].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ reviewed the six infant domains, 20 C.F.R. § 416.926a, and concluded that claimant did not have impairment or combination of impairments with "marked" limitations in two of the domains or at least one domain at the "extreme" limitation [R. 19-24]. The table below lists the domains and the ALJ's finding of degree of impairment.

| Domain | Degree of Impairment |
|---|---|
| Acquiring and Using Information | Less than marked |
| Attending and Completing Tasks | Marked |
| Interacting and Relating with Others | Less than marked |
| Moving about and Manipulating Objects | Less than marked |
| Caring for Self | Less than marked |
| Health and Physical Well-Being | Less than marked |

[R. 19-26]. These findings are in accord with the evaluation of state agency psychological consultant, J. Meyer, from June 2014 [R. 20, 21-22, 23, 24, 25, 26, 236-37].

As for acquiring and using information the ALJ noted that the state agency psychological consultant, J. Meyer, concluded that claimant was less than marked limitations [R. 20, 236]. The ALJ cites claimant's third grade teacher that claimant had serious problems comprehending oral instructions, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and applying problem-solving skills in class discussions [R. 20, 350], and a very serious problem expressing ideas in writing [R. 350]. M.B.M. also had obvious problem comprehending and doing math problems [R. 20, 350], while slight problems with understanding school and content vocabulary, reading and comprehending written material, learning new material, and recalling and applying previously learned material [R. 20, 350]. Claimant's teacher noted that M.B.M.'s difficulties in acquiring information "lie directly related to his inability to focus" [R. 350]. Plaintiff testified that claimant was a year behind in school and cannot write long-handed, but he can read letters, simple words, read and understand simple sentences [R. 20-21, 333]. Resting on school reports from claimant's third through fifth grades, the ALJ found that claimant had "some significant limitations" but not to the level of marked [R. 21, 15-16].

3

As for interacting and relating with others, the ALJ found claimant was that Dr. Meyer also found that plaintiff was less than marked in this domain [R. 23, 237]. Since claimant has taken new medication, his problems have not recurred [R. 23, 353]. Before claimant would lash out in anger when frustrated, but on his medication, he is calmer [R. 23, 353]. Plaintiff stated that claimant does not have friends [R. 23, 212, 335] but the ALJ found that claimant's condition was less than marked because he was able to interact with his peers [R. 23].

On moving about and manipulating objects, the ALJ found Dr. Meyer noted that claimant engaged in occupational therapy [R. 24, 237]. The ALJ notes plaintiff's testimony that claimant's ability to walk, run, throw, ride a bicycle, jump rope, roller skate, swim, use scissors, work game controls, and dress action figures [R. 24, 334]. "After considering his history and current need for occupational therapy," the ALJ concluded that claimant was less than marked limitation in this area [R. 24].

As for caring for self, the ALJ said that plaintiff reported that claimant had no problem in his ability to clothe, bathe or feed himself [R. 25, 336], although plaintiff testified that, due to his obsessive compulsive disorder, claimant does not like to touch himself to clean himself, he hovers when he went to the bathroom, wetting the bed and himself [R. 213-14]. Plaintiff also testified that claimant did not keep up with his hygiene, not brushing his teeth and not showering until compelled to do so [R. 213]. The ALJ did acknowledge plaintiff's report that claimant had difficulty sleeping [R. 25]. The ALJ emphasized that claimant refused to take medication on multiple occasions [R. 25]. With all this, the ALJ found that claimant had a less than marked limitation for this domain [R. 25].

4

Finally, as to claimant's health and physical well-being, the ALJ again found claimant's limitations were less than marked, agreeing with Dr. Meyer's finding [R. 26, 237]. Claimant had normal physical examinations [R. 26, 527-604]. While plaintiff reported claimant had no physical problems, plaintiff said that claimant zoned out and drifted at school and at home [R. 26, 606].

Considering these domains, the ALJ found claimant's medically determinable impairments could be reasonably expected to produce some of the symptoms, but statements as to intensity, persistence and limiting effects of these symptoms are not consistent with medical evidence or other evidence in the record [R. 15]. The ALJ did not specify whether the statements were from plaintiff or claimant. Since claimant did not have an impairment or combination of impairments that resulted in marked limitations in two domains of function, the ALJ held claimant was not disabled [R. 26].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any

5

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A claimant under 18 years of age, such as the claimant here, is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations," and the impairment or impairments must have lasted or expect to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C) (see Docket No. 14, Def. Memo. at 11). Under the applicable regulations, the infant claimant must show that he is not working, that he has a "severe" impairment or combination of impairments, and that his impairment or combination of impairments was of listing-level severity, that is met, medically equaled, or functionally equaled the severity of listed impairments, 20 C.F.R. § 416.924. Functional equivalence of limitations, in turn, are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being, id. § 416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain (not claimed here) constitutes a functional equivalent to a listed impairment, id. § 416.926a(d). Each domain is evaluated on whether the claimant has no limitation, is less than marked, marked, or extreme limitation, id. § 416.926a(b)(1).

  "Marked" limitation for a domain is when a claimant's impairment(s) "interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or

when the interactive and cumulative effects of your impairment(s) limit several activities," 20 C.F.R. § 416.926a(e)(2)(i).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from working. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the claimant is suffering from a disability, the ALJ must employ a multi-step inquiry:

> (1) whether the claimant is engaged in substantial gainful activity;
>
> (2) whether the claimant suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations, as assessed for the six domains of infant functioning.

20 C.F.R. § 416.924(a)-(d); see 20 C.F.R. §§ 416.920, 416.972, 416.923, 416.926, 416.926a; see Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

*Application*

I.      Application of Six Infant Domains

Plaintiff argues that claimant had marked limitations in three other domains in addition to attending and completing tasks (Docket No. 16, Pl. Memo. at 18-26), specifically, acquiring and using information (id. at 20-22), interacting and relating with others (id. at 23-25), and caring for himself (id. at 25-26). With his marked limitations in attending and completing tasks, claimant needs at least a second domain that are marked limitation to be deemed disabled.

      A.      Acquiring and Using Information

Plaintiff argues that the ALJ erred in finding that claimant was in regular classroom setting despite being in an 8:1+1 special education setting in the sixth grade, having 504 modifications and accommodations, and mental health treatment (Docket No. 16, Pl. Memo. at 20; [R. 403, 397-406, 20-21]).

The ALJ reached his finding on claimant's third, fourth, and fifth grade teachers' reports of "good improvement" and claimant's third grade teacher's answers to the questionnaire that claimant was less than marked on this domain and any limitation is due to claimant's ability to maintain focus and attention [R. 21], which is covered by attending and completing tasks domain [see R. 21-22]. These grade reports predate claimant's assignment to a special education setting. The ALJ thus considered claimant's past educational record, where he was in a regular classroom with some accommodations, rather than the proposal for special education with additional services and accommodations.

B.   Interacting and Relating with Others

Plaintiff argues that the ALJ disregards claimant's communication difficulties, despite the Social Security regulation stresses written communication (Docket No. 16, Pl. Memo. at 23, citing SSR 09-05p).

Dr. Meyer noted from claimant's teacher reporting (around 2014) claimant's serious problems expressing his anger appropriately and introducing and maintaining topics in conversation [R. 237].   The ALJ focused on claimant's third-grade teacher's evaluation for this domain at points that were only a slight problem or an obvious problem [R. 23, 353].   The teacher there noted that claimant had only an obvious problem using adequate vocabulary and grammar to express thoughts and ideas, using language appropriate to the situation and listener [R. 353, 23].

Looking at the third-grade teacher's questionnaire from June 2014, claimant's teacher reported that claimant had to be removed from the classroom on several occasions because of his temper [R. 353, 23].   Claimant would knock things over, push children and other inappropriate behavior [R. 353].   Once claimant started taking medication, he has not had these problems [R. 353, 23].   Claimant's speech was understandable about half the time for a known topic and very little for an unknown topic but could be understood after repetition about one-half to two-thirds of the time [R. 354].   This was not noted by the ALJ in considering this domain.   After claimant began taking medication for ADHD, this teacher also noted that he seemed tired and "in a cloud" [R. 356].

From this record, it is unclear how the ALJ reached the finding that claimant could interact with his peers [R. 23], save medication claimant has taken in the third grade.   The

9

record does not contain teacher questionnaires from claimant's fourth or fifth grade teachers; the only evidence from them are the 504 special education evaluation reports and accommodation plans for those grades [R. 383-422]. Plaintiff testified that claimant was aggressive at times, noting that claimant was in social therapy to better communicate [R. 212, 215, 221]. As discussed below, plaintiff argues that the ALJ failed to assess her credibility on this and other matters.

      C.      Caring for Self

The ALJ noted that claimant's teacher did not find any limitation in claimant caring for himself [R. 25]. The ALJ noted plaintiff reported claimant did not have problems clothing, bathing, or feeding himself [R. 25] based on her response to the function report form [R. 336], notwithstanding plaintiff's testimony about her son's hygiene [R. 212-14]. The ALJ also mentioned claimant's hospitalization for suicidal reports [R. 25, 14] and problems sleeping [R. 25, 19, 492].

Plaintiff characterized this as "a decidedly narrow evaluation of this domain," ignoring evidence in the record (such as claimant's self-injury, disturb eating and sleeping) (Docket No. 16, Pl. Memo. at 26). Defendant counters that the ALJ recognized the evidence and came to a different conclusion (see Docket No. 21, Def. Memo. at 19).

This domain could be interpreted as the ALJ and plaintiff had. For example, plaintiff's response in the function report form disclaimed any limitations for this domain [R. 336] while later testifying to the contrary for hygiene issues [R. 212-14]. The ALJ is in the better position to weigh such evidence. The ALJ's failure to make an express finding as to plaintiff's credibility for her testimony, however, is addressed below. As such, this Court must defer to the

10

Commissioner's resolution of conflicting evidence (as found by the ALJ), see Z.J.F. by Conkling v. Comm'r of Soc. Sec., No. 6:16CV1397(WBC), 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Docket No. 21, Def. Memo. at 19-20). The ALJ had sufficient evidence to find that claimant's limitations in this domain were less than marked.

    D.    Is There another Marked Domain?

As a result, the ALJ failed to recognize that claimant had marked limitations for interacting and relating with others, a second infant domain that was at least marked. With the second marked domain, claimant has established his disability. Plaintiff's motion on this ground is **granted**.

II.    Evaluation of Opinions

Plaintiff next complains that the ALJ did not properly evaluate opinions (Docket No. 16, Pl. Memo. at 26-28). For the ALJ's 2016 decision, plaintiff contends that the ALJ relied upon the opinion of Dr. Janine Ippolito of May 2014 [R. 435-39, 17], which was stale and incomplete, not based upon subsequent events. Claimant was in special education settings after May 2014 but Dr. Ippolito's evaluation did not reflect these circumstances (id. at 27-28).

The ALJ gave great weight to Dr. Ippolito's opinion because of its consistency with the mental status examination and claimant's reports during the evaluation [R. 18]. Plaintiff now complains that Dr. Ippolito's opinion did not consider claimant's special education placement, his hospitalization, and suicidal ideation (Docket No. 16, Pl. Memo. at 18; Docket No. 23, Pl. Reply Memo. at 2; [R. 233-40, 434-49]).

Defendant argues that the ALJ was not required to give "good reasons" for the weight given to non-treating sources, such as the agency or consultative examiners (Docket No. 21, Def.

Memo. at 21-22), 20 C.F.R. § 416.927(e)(2)(i). Dr. Ippolito's opinion was consistent with claimant's mental health examination and reports (id. at 22). Further, the ALJ consider subsequent evidence after Dr. Ippolito's 2014 assessment (id.).

With the remand called for in this Order, the ALJ can reappraise the psychological record including the opinions from non-treating sources.

III.     Plaintiff's Opinion as Claimant's Mother

Finally, plaintiff contends that the ALJ did not evaluate her credibility as claimant's mother (Docket No. 16, Pl. Memo. at 28-30). Plaintiff testified that claimant was disabled due to ADHD [R. 212, 14]. She noted claimant was in special education classes [R. 212, 14]. Plaintiff noted that claimant was aggressive, difficult with others, had concentration problems, hyperactivity, poor personal hygiene, and obsessive-compulsive tendencies such as not touching door knobs, not sitting on the toilet, and thinking everything is dirty [R. 212-14, 14]. She said that claimant hit people, has been suspended from school, and requires special accommodations when at school [R. 215, 14]. Plaintiff reported in a November 2015 therapy session claimant's increased hyperactivity but conceded that claimant did not take Prozac consistently [R. 19, 504]. Claimant was not taking Adderall in April 2016 [R. 19, 626]. Plaintiff testified that claimant took other medicines (Clonidine and Methylphenidate) that were less effective than Adderall or Prozac because claimant refused to take Adderall or Prozac, even when hospitalized [R. 221-22].

Defendant responds that the ALJ "appropriately discussed" plaintiff's testimony summarizing her testimony and discussing her testimony for some of claimant's domains (Docket No. 21, Def. Memo. at 22-23; [R. 14, 20-26]). Defendant concludes that the ALJ

weighed her credibility and compared her testimony with the medical record (Docket No. 21, Def. Memo. at 24).

Plaintiff continues to reply that the ALJ still failed to sufficiently evaluate and explain her credibility and this is harmful because plaintiff's testimony supports finding marked limitations in several domains (Docket No. 23, Pl. Reply Memo. at 6). The ALJ needs to state a parent witness is not credible with "sufficient specificity to permit intelligible review of the record," Rozler v. Colvin, No. 12CV1000, 2014 WL 7358708, at *10 (W.D.N.Y. Dec. 23, 2014) (Telesca, J.) (id.). Conclusory statements such as "the individual's allegations have been considered" or that "the allegations are (or are not) credible" are insufficient, id. (quoting SSR 96-7p, 1996 WL 374186, at *4 (S.S.A., July 2, 1996)).

The ALJ here noted plaintiff's testimony [R. 14, 19, 20-21] and found that statements as to claimant's impairment symptoms but did not make a credibility assessment of plaintiff or the source of the statements that the ALJ diminished as compared with the medical record. Unlike the situation where the ALJ makes conclusory statements as to credibility that this Court cannot accept, see Rozler, supra, 2014 WL 7358708, at *10, the ALJ in this case did not even make that credibility assessment. Both the plaintiff and the eleven-year-old claimant testified [R. 212-23, 224-30, 14-15]. When "the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent," F.S. v. Astrue, No. 1:10-CV-444 MAD, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012), quoted in Rozler, supra, 2014 WL 7358708, at *10. The ALJ made no finding distinguishing the credibility of the claimant or plaintiff. As in Rozler, supra, the ALJ did not make a specific credibility finding as to parent Plaintiff's testimony. In Rozler,

13

Judge Telesca concluded that remand was required because "the Court thus is left without a basis to determine whether the appropriate legal standards were applied; nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion," id. Similarly, remand is required in this case for the same reason. Plaintiff's motion (Docket No. 16) is **granted** on this ground.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 16) judgment on the pleadings is **GRANTED**, and defendant's motion (Docket No. 21) for judgment on the pleadings is **DENIED**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 17, 2019